DISSENTING OPINION.
Opinion delivered by
Justice Turney,
Chief Justice Nicholson concurring.
In September, 1862, C. C. Maydwell died, leaving his widow, Susan M., and an unnamed child, his only heir. Soon after the death of the father the child died, and from it the mother inherited real estate descended from the father.
On the 30th of March, 1866, Susan M., who is lately dead, conveyed the real estate in trust to Lewis Amis, first, to pay to Kortrecht & Craft fees to the amount of twenty-five kwndred dollars ($2,500). Second, to raise a fund sufficient, with the probable rents and income of the balance of the property not sold, to provide for the comfortable and liberal support *575 of herself and children (not of the marriage), and the education' of the children, according to their condition in life, etc.,.for and during her natural life.1 At her death all the remainder and residue of said property and estate, its proceeds, rents, incomes, and profits shall be divided, •titles vesting immediately upon her death, one-half to her son William, one-fourth to her son James Van Hook, and the remainder to her son George Washington.The trustee to be paid fully for his services, care, and trouble in performing the trusts. On the 16th of May, 1867, the administrator of C. C. Maydwell filed his bill seeking to subject the realty to the payment of his intestate’s debts, the personalty being exhausted. This application is resisted upon Sec. 2256 of the Code, which enacts: “And if an heir or devisee alien the land before action brought or process sued out, he shall be answerable for the ancestor’s debts to the value of the land aliened.”
This is substantially the Act of 1789, ch. 39, sec. 3, and which is in the words:
“When any heir at law shall be liable to pay the debts of his or her ancestor, in regard of any lands, tenements, or hereditaments descending to him or her, or where any devisee shall be liable to pay the debt of a testator in regard of lands devised to him or her, and shall sell, alien, or make over the same before action brought or process sued out against him or her, that such heir at law or devisee shall be answerable for such debt or debts to the value of said land so by him or her sold, aliened, or made over, *576 in which cases all creditors shall be preferred as in action against executors or administrators, and execution shall be taken out upon any judgment or decree obtained against such heir or devisee to the value of said lands, as if the same were his or her own proper debts, saving that the lands, tenements, and heredita-ments bona fide aliened before the action brought, shall not be liable to such execution.”
In Smith v. Stump’s heirs, Peck, 278, a case arising under the Act 1789, Judge Haywood says:
“Say that the judgment is to be entered against the lands descended, this description covers the lands descended and aliened before action commenced or process sued out against the heir, and will reach lands, the value of which the heir has paid to the creditors of his ancestor, which became thereby no longer liable to the debts of his ancestor. And moreover, in case of such judgment and writ of execution correspondent to it, the sheriff, in his discretion, would sell whatever other lands, in his opinion under the description of lands, descended, and for every sale would make a law suit, and there is no discr’etion left in the sheriff. Such authority can not be given without great inconvenience, and is not warranted by principle, which rather makes the defendant liable personally, than commit such unreasonable and unnecessary powers to the sheriff when he has no means of trying conclusively any of the facts which render the lands descended not liable to the debts of the ancestor.”
One of the chief objections urged by Judge Hay *577 wood lies in this case: part of the realty has been sold since the alienation by the mother.
In book 2, p. 287, Blackstone says: “ The most usual and universal method of acquiring a title to-real estates is that of alienation, conveyance, or purchase in its limited, sense, under which may be comprised any method wherein estates are voluntarily resigned by one man and accepted by another, whether that be effected by sale, gift, marriage, settlement, devise, or other transmission of property by the mutual consent of the parties.”
In vol. 4, p. 509 of his Commentaries, Chancellor Kent says:
“A purchase, in the ordinary and popular acceptation, is the transmission of property from one person to another by their voluntary act and agreement, founded on a valuable consideration. But in judgment of law it is the acquisition of land by any lawful act of the party in contradistinction to operation of law, and it includes title by deed, title by matter of record, and title by devise.
“The alienation of property is among the earliest suggestions flowing from its existence. The capacity to dispose of it becomes material to the purpose of social life as soon as property is rendered secure and valuable in the progress of nations from a state of turbulance and rudeness to order and refinement. The power of alienation is a necessary consequence of ownership, and it is founded on natural right. In the times of the Anglo-Saxons, lands were alienable either by deed or by will.”
*578 We see from these authorities the term “alien” embraces every mode of disposition exercised by mutual consent, without regard to consideration. It was the intention of the Legislature, in the passage of the Act before us, to use the term in its legal signification, and have it include, as it does, all the other terms used in the Act of 178fi, the younger act being merely a codification, and not a repeal nor abridgment of the scope of the older. In my judgment it can make no difference that Susan M. Maydwell inherited from her child, the heir of C. C. Maydwell. By that inheritance she took all the rights of the heir, amongst them the right of alienation. Just such interest as vested in the child from the father vested in the mother from the child; the descent cast by the death carried the entire estate with all the incidents of the right of alienation.
The Section as to real assets, etc., should be construed so as to be consistent with the one before us, allowing both to stand. I think the decree should 'be reversed, and the bill dismissed, so far as it pertains to the realty conveyed in trust by Susan M. Maydwell,